STATE EX REL. TINGLEY, Plaintiff in error, vs. HANLEY, Sheriff, Defendant in error.*

*March 15—April 12, 1946.*

* Motion for rehearing denied, with $25 costs, on June 4, 1946.

*Matthew R. Derzon,* attorney, and *William B. Rubin* of counsel, both of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William J. McCauley,* district attorney of Milwaukee county, and *Joseph E. Tierney,* deputy district attorney, and oral argument by *Mr. Tierney.*

FOWLER, J. Dr. Tingley on preliminary examination in the district court of Milwaukee county was held for trial in the municipal court of Milwaukee county on the charge of producing an abortion on the body of Mrs. Anna Matovich, a married woman, and thereby causing her death in violation of sec. 340.16, Stats., set out in the margin.[1] On being committed to the county jail in default of furnishing a bond for his appearance for trial, Dr. Tingley petitioned for and was granted a writ of *habeas corpus* by the circuit court for Milwaukee county. Hearing was had before Judge KLECZKA, who quashed the writ. The case is before us on a writ of error procured by petitioner.

A post-mortem was performed by Dr. Tharinger, a pathologist of thirty years' experience, and he testified that "an abortion had occurred" and that the death "was the result of septicemia due to abortion." There was no evidence of instrumentation, and none that any drug was administered. His evidence in itself does not connect the petitioner with the abortion and leaves the *corpus delicti* unproved.

The state relies in support of the imprisonment partially upon hearsay testimony of statements made by Mrs. Matovich to the witness Mrs. St. Germaine, but contends that the statements were made under circumstances such as to render them admissible and Judge KLECZKA in a thorough and well-reasoned opinion sustained this contention. It is claimed by the petitioner that this hearsay evidence is inadmissible. We will first determine as to the admissibility of this hearsay testimony.

---

[1] Sec. 340.16 Any person who shall administer to any woman pregnant with a child any medicine, drug or substance whatever, or shall use or employ any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or of such mother be thereby produced, be deemed guilty of manslaughter in the second degree.

It is without dispute that Mrs. Matovich died on February 5, 1945, as a "result of septicemia due to abortion." She was taken to Mercy Hospital at 11 p. m., Friday, February 2d. Mrs. St. Germaine occupied the first floor of a duplex house and Mrs. Matovich the upper apartment. The testimony of Mrs. St. Germaine is stated in the opinion of Judge KLECZKA as follows:

"About three weeks before January 26th the deceased told her 'she thought she was pregnant and she was going to do something about it because she would not go through with it.'

"This witness had a later conversation with the deceased, approximately on the 21st or 22d of January, 1945, in which the deceased told her she was going to see the doctor, and the deceased mentioned Dr. Tingley's name.

"On Saturday following January 26th, the witness was called to the home of the deceased, which was in the same building where the witness resided, and the deceased said to her 'I just got rid of something.'

"On the following day, to wit, on Sunday, the deceased asked the witness to call the doctor, the petitioner herein, and the petitioner responded to the call and talked to the deceased. On the following day, to wit, on Monday, the witness, at the direction of the deceased, called the petitioner and advised him that the deceased passed 'a large clot' to which information petitioner responded that that was fine.

"The doctor called again on the following Wednesday and also on the following Thursday, and on the following Friday twice. The deceased was taken to the hospital that Friday evening, and on the following Saturday afternoon she met, in an automobile, the petitioner and a certain Mr. Johnson, pursuant to a previous telephone appointment. The witness testified that the petitioner, Dr. Tingley, said to her, 'The three of us are in it up to our necks;' that the investigators will be called in on the case.

"The witness further said, 'I did not do anything. Why implicate me?' To this the petitioner said, 'Nevertheless you could be held in some way or another, as an accessory to the crime.' The witness further said that the petitioner stated that 'we would have to fix our stories so they would jibe;'

that 'I know nothing about Mrs. Matovich's pregnancy, and that I should say that she fell down the steps and the doctor was called in to treat her back.' I told him that I could not say that because there was someone at home at all times, and I could not say a story like that.

"The witness further testified that the petitioner gave her some money and asked her to give it to Mrs. Matovich's sister to take to the hospital."

That the *corpus delicti* may be inferred from circumstantial evidence alone was decided by this court in *Buel v. State*, 104 Wis. 132, 80 N. W. 78, and reiterated in *Schwantes v. State,* 127 Wis. 160, 174, 106 N. W. 237. The holding of the *Buel Case* was approved in *Paulson v. State,* 118 Wis. 89, 96, 94 N. W. 771, and *Winsky v. State,* 126 Wis. 99, 102, 105 N. W. 480. This being the settled law of this state there is only left for determination whether the circumstances here relied on are such as to make receivable in evidence under the exemptions to the hearsay rule the hearsay statements, and whether these statements are sufficient with other evidence properly received to satisfy the magistrate that the offense charged was committed and that the petitioner was guilty.

That the statements were receivable in evidence seems to be conclusively established by our decision in *State v. Timm,* 244 Wis. 508, 12 N. W. (2d) 670. The matter of admission of hearsay statements is discussed in paragraph (2), page 516 *et seq.,* of the opinion in that case. There the witnesses, Mrs. Schlabach and Mrs. Streeter, testified as to statements made by the deceased to them just as here Mrs. St. Germaine so testified. Some of them related to past occurrences there as here. Such hearsay testimony becomes admissible on the theory that the deceased and the doctor producing an abortion or miscarriage are necessarily conspirators and the declarations of one coconspirator made during the pendency of the conspiracy are receivable against his coconspirators. See secs. 351.22 and 351.23, Stats., making it a crime to produce a miscarriage or attempting to do so.

It is true that the hearsay testimony alone was not sufficient in itself to justify the inference of the petitioner's connection with the abortion. But there is also the direct testimony of Mrs. St. Germaine that after the death of Mrs. Matovich, the witness, a Mr. Johnson, and the petitioner were together, and that the petitioner then said that "the three of us are in it up to our necks;" that there was to be an investigation, and "we would have to fix our stories so they would jibe;" and that the witness should say that she knew nothing about deceased's pregnancy; that the deceased fell downstairs, and that the petitioner was called to treat her back; and that Dr. Doern, the superintendent of the hospital where the deceased was taken, had to have money; that the petitioner took money out of his wallet and gave it to the witness to give to the deceased's sister to be taken to the hospital.

We think that the hearsay testimony of Mrs. St. Germaine, her testimony of the statements of the petitioner after the death, the giving of the money to her by the petitioner to be given to the sister to be taken to the hospital, and the attempt to get the witness to give testimony to jibe with that of himself and Johnson at the forthcoming "investigation," all undenied and undisputed, justified the district judge in determining that there was sufficient evidence to make it appear "that an offense [that of abortion resulting in death] had been committed and that there is probable cause to believe that the defendant is guilty." That is all that is necessary to sustain holding the petitioner for trial. Sec. 361.18, Stats. It may be stated further that in *Scott v. State,* 211 Wis. 548, 556, 248 N. W. 473, this court held that attempts to influence a witness made by a defendant after an offense has been committed "tend to show in some degree a consciousness of guilt [and] may be placed in evidence."

The petitioner contends that the declarations of a coconspirator are not admissible until a *prima facie* case of conspiracy is first made, and that the testimony of hearsay state-

ments of the deceased here appearing were made before any evidence of a conspiracy was produced. But the hearsay testimony was all given by Mrs. St. Germaine in the course of her uninterrupted examination, and we think it is immaterial that her direct testimony as to the petitioner's statements after the death was given after her hearsay testimony was given.

*By the Court.*—The order of the circuit court is affirmed.

RECTOR, J., took no part.

* Motion for rehearing denied, without costs, on June 4, 1946.