CACCITOLO, Plaintiff in error, v. STATE, Defendant in error.

*No. State 182. Argued May 6, 1975.—Decided June 16, 1975.*
(Also reported in 230 N. W. 2d 139.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. On February 12, 1974, following a trial to a jury, James J. Caccitolo was found guilty of intentionally intercepting a wire communication, in violation of secs. 968.31 (1) (a) [1] and 939.05 (1),[2] Stats. On

[1] "968.31 **Interception and disclosure of wire or oral communications prohibited.** (1) Except as otherwise specifically provided in ss. 968.28 to 968.30, whoever commits any of the acts enumerated

March 15, 1974, the judgment of conviction was entered. Sentence was, however, withheld, and Caccitolo was placed on two years probation. Caccitolo's motion to dismiss the information, or in the alternative for a new trial, was denied. Upon Caccitolo's application, writs of error were issued to review the judgment of conviction and the order denying the motion to dismiss the information and for a new trial.

It is Caccitolo's basic contention that hearsay evidence was improperly admitted at both the preliminary hearing and at the trial. The defendant contends that, without inadmissible hearsay, the trial court could not have found probable cause and, therefore, the information should not have issued. He also contends that the only evidence at trial to support his conviction was inadmissible hearsay.

Our examination of the record of the preliminary examination and the trial shows that there was sufficient evidence, free of any hearsay taint, adduced at the preliminary examination to warrant a finding of probable cause and there was sufficient evidence properly admitted at trial pursuant to which the jury could find the defendant guilty beyond a reasonable doubt. Accordingly, we affirm.

This case has its genesis in a marital dispute between Stan McGaw and his wife. It is undisputed that Stan McGaw illegally tapped the telephone line to his wife's

---

in this section may be fined not more than $10,000 or imprisoned not more than 5 years or both:

"(a) Intentionally intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire or oral communication."

[2] "939.05 Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act."

residence. That tap was discovered on March 21, 1973. Stan McGaw and his wife were living apart at this time, and Stan McGaw was living at the residence of his brother, Donald McGaw. There is no dispute that the defendant, James J. Caccitolo, provided the electronic equipment used to make the tap after McGaw admittedly hired Caccitolo, a private investigator, to do surveillance work in respect to McGaw's marital problems. Caccitolo denies, however, that he had any intention to tap Mrs. McGaw's phone. He argues that the equipment was given to McGaw only so McGaw could tap his own phone at the residence of his brother, where he lived apart from his wife.

The jury concluded that there was sufficient evidence to show that Caccitolo was guilty of intentionally intercepting a wire communication by participating in the placing of a tap on Mrs. McGaw's telephone line.

The wiretap was discovered on March 21, 1973, after Mrs. McGaw notified the telephone company that she heard a buzzing noise on her phone. An employee of the telephone company found that the telephone pedestal terminal had been connected to a tape recorder, which was found in a shed on the premises of Richard Lee, whose property was near Mrs. McGaw's residence.

Stanley McGaw died on April 13, 1973. Accordingly, some of the evidence adduced at both the preliminary examination and the trial involved statements made by McGaw, who obviously was not subject to cross-examination. The basic question is whether the hearsay statements were admissible into evidence, either because they came within the exceptions to the hearsay rule or because the hearsay rule was otherwise satisfied, or whether they were admissible because they were introduced for other than the assertion of the truth of the matter stated therein and therefore were not hearsay.

Hearsay was defined by this court in *Grunwald v. Halron* (1967), 33 Wis. 2d 433, 439, 147 N. W. 2d 543, wherein the court adopted the definition utilized by McCormick, *Evidence,* p. 460, sec. 225:

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' "

The Wisconsin Rules of Evidence provide:

"HEARSAY. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Sec. 908.01 (3), Stats.

In accordance with those definitions, the hearsay rule is inapplicable to out-of-court assertions, although made by one not present in court for cross-examination, if the statement is not offered to prove the truth of the matter asserted.

Caccitolo was bound over on May 29, 1973, to trial to the circuit court.

A number of statements made by Stan McGaw and testified to by others were introduced at the preliminary examination. Each of these statements was objected to as hearsay.

Richard Lee, the neighbor of Mrs. McGaw, in whose shed the tape recorder was located, stated that he was spoken to by Stan McGaw about a week before the tape recorder was discovered. Over objection of the defendant, Lee was permitted to testify that, "He [McGaw] asked me if he could use my property to place a recorder so he could record his wife's voice, or telephone conversations." The trial judge admitted this statement because, he concluded, "The request to use the shed is not hearsay but is evidence merely of the fact of consent."

Caccitolo acknowledges that the first portion of the disputed statement is not objectionable, because it only proves that McGaw sought Lee's consent to use the shed. Caccitolo objects to the balance of the statement, because it purports to show that McGaw, in truth, intended the tap for the purpose of intercepting his wife's conversations. The latter portion of this statement is clearly hearsay. However, it is in respect to an undisputed fact. No one contends that Stan McGaw did not intend to intercept his wife's conversations. While the admission of the statement was clearly erroneous, that statement, taken by itself, in no way inculpates Caccitolo. The error is harmless. The testimony admitted was only cumulative to uncontested facts.

The state argues, however, that the testimony was admissible, because it was made by a co-conspirator of Caccitolo. At the time the preliminary examination was held, the Wisconsin rule in respect to the admissibility of hearsay statements by a co-conspirator was that a statement of a co-conspirator is admissible if made in the course of conspiracy. *State v. Adams* (1950), 257 Wis. 433, 437, 43 N. W. 2d 446; *State ex rel. Tingley v. Hanley* (1946), 248 Wis. 578, 582, 22 N. W. 2d 510; and *State v. Timm* (1944), 244 Wis. 508, 516, 12 N. W. 2d 670. While some earlier cases of this court, *e.g., Pollack v. State* (1934), 215 Wis. 200, 214, 253 N. W. 560, 254 N. W. 471, required that, for a hearsay statement of a co-conspirator to be admissible, it be not only in the course of the conspiracy but in furtherance of it. That portion of the rule requiring that the statement be "in furtherance of the conspiracy" was not the law of Wisconsin at the time of the preliminary hearing.

The rule in respect to the admission of statements by a co-conspirator was modified by the Wisconsin Rules of Evidence adopted by this court in 59 Wis. 2d Rp. 1, effec-

tive January 1, 1974. Under the code which was in effect during the trial of this case but not at the time of the preliminary hearing, "a statement by a co-conspirator of a party during the course and *in furtherance of* the conspiracy" is admissible. (Emphasis supplied.) Sec. 908.01 (4) (b) 5, Stats.[3]

McGaw's statement is not admissible, because there is no evidence to show that the conspiracy had begun on that date. Its admission was, however, harmless error.

At the preliminary examination, Lee testified in respect to two other statements made by McGaw. He stated that, on the evening of the same day that McGaw asked for permission to use the metal shed, he saw McGaw and Caccitolo in his backyard. Lee said he went into the yard and McGaw introduced Caccitolo to him. Lee was permitted to testify that McGaw said, "Everything will be all right." Lee stated that he then returned to his house, and upon emerging later he went into the backyard and "Stan said everything was all right." Lee said he looked into the shed and saw the tape recorder with a wire attached to it.

Neither of these two statements were hearsay. Clearly, they were not introduced for the purpose of proving that in fact "everything was all right." However, were these statements hearsay, they would nevertheless be admissible because they were made by a co-conspirator in the course of a conspiracy.

Judge JACKMAN, in ruling on the bindover, correctly held that these statements were not hearsay; but he did so for the wrong reason. He stated that they were admissible because the statement of McGaw was made in the presence of the defendant Caccitolo. The presence

---

[3] Under Wisconsin law, the vicarious admissions of co-conspirators are admissible whether or not conspiracy is charged, if there is in fact evidence of conspiratorial conduct. *Pollack v. State* (1934), 215 Wis. 200, 214, 253 N. W. 560, 254 N. W. 471.

of the defendant, however, does not in itself mean that a statement is not hearsay. McCormick states:

"The presence or absence of the party against whom an out-of-court statement is offered has significance only in a few particular situations, e.g., when a statement spoken in his presence is relied upon to charge him with notice, or when failure to deny a statement spoken in his presence is the basis for claiming that he acquiesced in or adopted the statement." McCormick, *Evidence* (2d ed.); p. 586, sec. 246.

Accordingly, when a statement is made in the presence of another, against whom it is desired to use that statement, the out-of-court utterance may be repeated in court and it will be admissible, not because it is not hearsay. It is hearsay. Rather, the hearsay rule has been satisfied by a form of cross-examination, or at least an opportunity to question the declarant. It is reasoned that, if a statement is made in the presence of another person, the defendant in this case, which would ordinarily be denied by that other person if it were not true and he does not deny it, then he has foregone the opportunity to dispute the statement. The hearsay rule is designed to reject untrustworthy utterances. Since the person whose interest was damaged by the statement did not avail himself of the opportunity to refute it, it is presumably trustworthy. He has foregone the opportunity of an out-of-court disputation; and the statement is admissible, not because it is not hearsay, but because the hearsay rule, at least to an extent consistent with judicial policy of ascertaining trustworthiness, has been satisfied.

It should also be pointed out that none of these statements are probative of Caccitolo's guilt. They are meaningless. In any event, they are insignificant in comparison with the direct evidence of Lee, who saw McGaw in his backyard with Caccitolo shortly after McGaw had been given consent to use the shed for the tap. Caccitolo

was carrying a bag of tools; and after Caccitolo and McGaw left, Lee found the tape recorder, attached to Mrs. McGaw's phone, where there had been none before. This eyewitness evidence was, in itself, sufficient to permit a finding of probable cause.

Still another statement offered at the preliminary examination was objected to. Lee testified that, sometime after the recorder was installed, he again talked to McGaw. Lee stated:

"He said he has heard things he just couldn't believe, that—actually, he just didn't believe what he heard, really, is about what he said."

Again, this statement is immaterial to Caccitolo's guilt or innocence. Whether it is hearsay or not, it is not prejudicial to Caccitolo. It is equally clear, however, that it is not hearsay, because it was not offered to prove the truth of the matter asserted therein, *i.e.*, it was not offered to show that McGaw did not believe what he heard. It no doubt was offered to show that McGaw, sometime after the installation of the tapes, had listened to them. This is not disputed.

The most damning evidence was Caccitolo's presence in Lee's yard at the time, inferentially at least, that the recorder was installed. Even were all the alleged hearsay statements excluded, this fact alone, under the circumstances, would be sufficient to warrant binding Caccitolo over for trial.

The appeal from the conviction is also based primarily on the claim of improper admission of hearsay statements. Even were the defendant correct in respect to the exclusion of each of the questioned statements, the clearly admissible evidence in itself would be sufficient to support the conviction and the admission of any hearsay statements would have been harmless error. We reiterate the crucial statement of Richard Lee, which paralleled that

which he gave at the preliminary examination. Lee testified that he saw McGaw and Caccitolo come into his backyard the same day or the day after Lee gave McGaw permission to use the shed and gave McGaw a key to the shed. Lee said he kept the shed locked. He also said he saw Caccitolo carrying a bag of tools into the yard. Lee observed tools in the bag. Later that day Lee saw a tape recorder in the shed, and McGaw had plugged in an extension cord, which led, Lee assumed, to the shed. Lee said that, prior to seeing McGaw and Caccitolo in the yard, he had never seen a recorder in the shed.

Caccitolo testified that he had given the equipment to McGaw so that he could tap his own phone—actually his brother's phone, since he was living with his brother —to monitor his (McGaw's) phone conversations with his wife. Caccitolo said he gave the equipment to McGaw when McGaw came to his office on March 14, 1973. Caccitolo's wife and daughter testified that McGaw came that day and left with the equipment.

Caccitolo admitted being in Lee's backyard with McGaw. Caccitolo said he went there with McGaw after McGaw called him. Caccitolo said that, when McGaw pointed out the recorder in the shed, Caccitolo "blew up" at McGaw. Caccitolo said he told McGaw the recorder was illegal and that he should get it out of the shed and back to his (Caccitolo's) office that night.

Robert Shunk testified that, after McGaw died, Caccitolo commented to him that "he had lent Stan some equipment to tap his wife's phone."

The evidence is overwhelming that Caccitolo actually installed the tap on Mrs. McGaw's phone. He was seen on the premises with the necessary tools, and shortly thereafter the tap was completed. Moreover, Caccitolo admitted the crime charged when he told Shunk he had given McGaw the equipment "to tap his wife's phone." This was credible testimony which the jury could believe

or disbelieve in its discretion. In view of that admission, as well as the other circumstantial evidence of guilt, the jury could hardly have reached any other verdict.

We, nevertheless, will briefly discuss the defendant's argument that inadmissible hearsay was improperly admitted.

In reviewing the record, it is at once apparent that Caccitolo's trial attorney never objected at trial to the admission of any testimony because it was hearsay. The state argues correctly that, by failing to object, Caccitolo waived the admissibility of that evidence. The recent case of *Bennett v. State* (1972), 54 Wis. 2d 727, 735, 196 N. W. 2d 704, holds:

"An objection must be made to the introduction of evidence as soon as the adversary party is aware of the objectionable nature of the testimony. Failure to object results in a waiver of any contest to that evidence."

Hearsay evidence, although it may be objected to, is nevertheless probative; and if it is admitted without objection, the judge and jury have the right to rely on it. Caccitolo's appellate attorney states that, prior to trial and in the course of motions to suppress the bindover, the trial counsel made objections to possible hearsay, and therefore he was not required to object to each question that might elicit hearsay testimony. It is true that a trial counsel, having once made objection to evidence of a particular kind during the course of trial, is not thereafter required to repeat the objections *ad nauseam* each time an improper question is posed by opposing counsel. While Caccitolo's counsel is correct in that general proposition of law, there were no objections in respect to hearsay objection made during the course of trial. Moreover, the statements which he now objects to on this appeal occurred at different times and under different

circumstances. Trial counsel is required to make a separate objection to evidence that arises out of different circumstances, even though the legal basis for the objection may be the same.

Counsel also argues that, prior to trial, when the judge indicated some doubt about the admission of certain out-of-court statements, the prosecutor agreed to submit his questions in the form of an offer of proof. Caccitolo's counsel therefore concludes that he was entitled to rely on his pretrial objection and that no arguably hearsay statements would be elicited except through an offer of proof out of the presence of the jury. We need not decide whether defense counsel's reliance was justified, for once it became apparent to him that testimony which he considered objectionable as hearsay was being admitted, he had the obligation to move to strike the statement and to ask the judge to instruct the jury to disregard the evidence. He failed to comply with this rule for the preservation of error. None of the alleged hearsay statements were objected to. Accordingly, they are not reviewable on appeal.

We can only conclude that the counsel at trial permitted hearsay evidence to come before the jury on the chance that it might be favorable to his client. No other explanation can be made of defense counsel's disregard of rather elementary procedural rules of evidence.

Furthermore, Caccitolo's appellate counsel objects to hearsay testimony that was elicited, not by the district attorney, but by the defense counsel himself at trial. Particularly, in this respect, we are concerned with a statement elicited by Caccitolo's attorney in the cross-examination of Robert M. Compton. In response to questions by defense counsel, matters previously not in evidence were introduced. A portion of those questions and answers elicited at trial by the defendant's attorney is quoted:

"*Q.* Well, didn't Mr. McGaw make a statement to somebody else against Mr. Caccitolo during the course of your investigation?

"*A.* Yes, according to a conversation I had with Mr. Esch at the telephone security office with Mr. Duxstad and the president of the telephone union, he indicated that.

"*Q.* McGaw had—let me see if I can clarify it for you. McGaw had said that Caccitolo did it?

"*A.* He indicated to me that he had talked with Stan McGaw and/or that he had talked, yes, Mr. Esch had talked to Stan McGaw and that McGaw claimed that Mr. Caccipola, is the word he used, Caccipola, had talked him into the wiretap; he was angry because now he was caught and he was in trouble. He referred to him by an ethnic name and everything."

This information was damaging to Caccitolo. It would have been objectionable as hearsay. In fact, it was double hearsay, but it is not reversible error when this evidence was brought to light by the defendant's own counsel and had not been previously touched upon by the prosecutor in direct examination.

We reiterate that, as in the preliminary examination, there is definite and direct evidence that put Caccitolo at the scene of the wiretap with McGaw at the time the tap was attached to the tape recorder. Moreover, the admission by Caccitolo to Robert Shunk that he had lent McGaw equipment to tap his wife's phone was clearly admissible. That evidence was in itself sufficient to sustain the conviction; and in the absence of proper objections to the hearsay, the jury was entitled to consider and rely on that evidence also.

Donald McGaw, the brother of Stan McGaw, was called as a rebuttal witness. Caccitolo's attorney objected on the ground that Donald McGaw had not been listed as a witness. In accordance with sec. 971.23 (3) (a), Stats.,[4] the defendant had served on the district attorney

[4] "971.23 Discovery and inspection. . . .

"(3) LIST OF WITNESSES. (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the dis-

a list of all his trial witnesses. This procedure required the district attorney to furnish a list of all witnesses that the state intended to call at trial. Donald McGaw's name was, however, not on the list of those prospective witnesses submitted by the state.

The statutes of 1971 provided:

"971.23 (3) . . . . This section shall not apply to rebuttal witnesses or those called for impeachment only."

Relying upon that portion of the statute, the district attorney, in response to defense counsel's objection, stated, "This is rebuttal your Honor." The court then permitted the district attorney to question Donald McGaw.

Approximately a week prior to the trial of this case, the portion of the statute relied upon by the district attorney and by the judge was held unconstitutional in the context of *Allison v. State* (1974), 62 Wis. 2d 14, 26, 214 N. W. 2d 437. Because that portion of the statute was declared unconstitutional in *Allison,* it is the position of counsel on appeal that that provision permitting impeachment and rebuttal witnesses was vitiated and found unconstitutional under all circumstances. We do not agree. *Allison* was concerned with a different situation. Mr. Justice WILKIE, writing for the court, limited the effect of the *Allison* holding by stating:

"This case involves a challenge to the Wisconsin 'notice-of-alibi' statute in effect at the time of this of-

trict attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial. This section shall not apply to rebuttal witnesses or those called for impeachment only."

fense, sec. 955.07, Stats. 1967, under the United States Supreme Court case of *Wardius v. Oregon*. It also involves the constitutionality of sec. 971.23 (8), the alibi statute as adopted in 1970 . . . ." (P. 19)

*Allison* is limited to the alibi situation, which is not at issue in this case. *Allison* relied upon *Wardius v. Oregon* (1973), 412 U. S. 470, 93 Sup. Ct. 2208, 37 L. Ed. 2d 82. In *Wardius,* an Oregon alibi statute substantially identical with Wisconsin's statute was held unconstitutional because that statute required a defendant to forego an alibi defense unless he first gave notice of alibi and stated in writing who his alibi witnesses were. The Oregon alibi statute, like the Wisconsin alibi statute, did not impose a reciprocal obligation upon the state to reveal its witnesses.

In *Wardius,* the United States Supreme Court pointed out:

"It is fundamentally *unfair* to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." (P. 476)

*Allison* properly followed *Wardius,* where the facts were almost identical, but the case before us is neither *Allison* nor *Wardius*. Unlike the alibi statute, our discovery statute, sec. 971.23 (3) (a), Stats., does not "require a defendant to divulge the details of his own case." It gives him an option by which he may require the state to divulge its witnesses and, as a matter of reciprocity, he must divulge his own. Sec. 971.23 (3) (a) does not require him to forego a valuable defense right, as did the alibi statute, unless he first concedes a substantial advantage to the state.

The discovery statute was only deficient and unconstitutional to the extent that, coupled with the alibi statute, it unfairly forced a defendant to make a disadvantageous

election in order to pose what might be a valid alibi defense. That situation is not present in the case before us. In other than the alibi situation, the final sentence of sec. 971.23 (3) (a) was not unconstitutional. Accordingly, the district attorney and the judge correctly relied upon the last sentence of sec. 971.23 (3) (a), and Donald McGaw was properly permitted to testify as a rebuttal witness.

On the other hand, there is substantial evidence to show that the state had subpoenaed Donald McGaw at least two weeks before he was called and that he was deliberately held back as a matter of the "dramatic" effect to be given to a final witness. However, this fact was not called to the attention of the trial judge, and the inherent discretionary powers of the trial judge to suppress this testimony were not invoked. The only position relied upon by defense counsel was that Donald McGaw's name was not on the list of witnesses. He did not rely on what might have been a proper ground—that McGaw was not a bona fide rebuttal witness.

Moreover, the testimony of Donald McGaw was merely cumulative to the testimony which definitely supported the guilt of Caccitolo. In view of the evidence provided by Richard Lee and Robert Shunk and the abundant circumstantial evidence, the result of the trial would have been the same even though Donald McGaw's testimony had been excluded.

We conclude, therefore, that Caccitolo was bound over for trial on the basis of evidence sufficient to show probable cause. The trial judge properly denied the order to dismiss the information. Caccitolo was found guilty on the basis of sufficient evidence to permit the jury to find him guilty beyond a reasonable doubt. The trial judge properly refused the motion for a new trial.

*By the Court.*—Judgment and order affirmed.