MACLIN, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–293–CR. Argued October 10, 1979.—
Decided November 6, 1979.*
(Also reported in 284 N.W.2d 661.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   This case is before the court for review of a judgment entered June 23, 1976,

finding the defendant guilty of attempted rape, party to a crime.

On October 15, 1975, a criminal complaint and warrant were issued against Joseph Maclin, Jr. (defendant), charging him with abduction, rape, atempted rape, all as party to a crime. The defendant voluntarily surrendered to the police on October 16, 1975.

At jury trial the alleged victim, P. B., a minor, testified that in the early evening hours of October 14, 1975, she left her house at 1016 West Capitol Drive where she lived with her parents to go to a gas station on the corner of Capitol Drive and Green Bay Avenue. She was walking east on Capitol Drive when the defendant, with whom she was acquainted, walked up to her and asked where she was going. When she indicated she was going to the gas station, the defendant responded no, that she was going with him. The victim refused, and the defendant then put his arm around her neck, in the manner of a headlock, and began pulling her back towards 11th Street.

P. B. testified that when they got to 11th Street the defendant was joined by Alvin "Goldie" Jones (Jones). The defendant, with his arm still around the victim, pulled her to his apartment, and Jones went with them. The victim stated she was pulled to a back bedroom in the apartment where Jones held her and the defendant tore her clothes off. While Jones held her, the defendant had sexual intercourse with her. When the defendant finished, the victim stated he got off her and said to Jones, "Now, Goldie, man, it's your turn." The defendant then left the bedroom. Jones lay on top of her, but before he could do anything the defendant's brother, Orlando Maclin, came into the room and told Jones to get off her. She stated that Jones did not have sexual intercourse with her. After Jones got off her, P. B. testified that she dressed and left the apartment. Just before she

left the defendant and Jones grabbed her, and Jones threatened to kill her if she went to the police.

The parties stipulated that P. B. was treated at Johnston Municipal Hospital at approximately 10:30 p.m. on October 14, 1975, and a pelvic smear was taken which revealed the presence of spermatoza.

The defendant testified that P. B. had voluntarily entered his apartment because she was locked out of her own house, and he invited her to use his phone. He said P. B. spoke to Jones which angered the defendant who then struck her two or three times. After striking her, the defendant saw Jones and P. B. go into the back bedroom. The defendant said he then left the apartment.

Defendant denied that he attempted to undress P. B., that he had sexual relations with her, or that he held her while Jones attempted to undress her. On cross-examination defendant testified that he had sexual relations with P. B. prior to October 14.

Two neighbors who lived in the defendant's apartment building testified that they were home at the time of the alleged incident and heard no shouting, screaming, or unusual noises, although sound carried easily throughout the building.

The doctor who examined P. B. testified that he found no evidence of tearing of the vaginal area or other external injuries.

The testimony of the defendant's brother supported the defendant's version of the events. He also testified that he later saw P. B. in the back bedroom with Jones. She was on the floor and Jones was leaning over her with his pants and underwear down. P. B. called to Orlando to get Jones off. Orlando told him to get off. When he did not get off immediately, Orlando pushed Jones off.

The state called a polygraph examiner to testify in rebuttal. The polygraph examiner testified that in his opinion Maclin was not telling the truth when he stated

he had not had sexual intercourse with P. B., had not had sexual relations with P. B., or when he stated that he had not removed P. B.'s slacks.

The jury found the defendant (1) not guilty of abduction—party to a crime; (2) not guilty of rape—party to a crime; and (3) guilty of attempted rape—party to a crime.

The issues presented on this review are: (1) Has the defendant waived his claim by failing to raise the issue of collateral estoppel at trial? (2) If not, was the prosecution of Maclin, as being a party to the attempted rape, barred by the doctrine of collateral estoppel because the person who allegedly committed the offense was acquitted of attempted rape—party to a crime and convicted of party to the crime of rape in an earlier trial? (3) Was the evidence produced at trial sufficient to support Maclin's conviction for being a party to the crime of attempted rape?

Approximately six weeks prior to the defendant's trial, Jones was on trial for the same three offenses. Jones was acquitted on the charges of being a party to the crime of abduction and party to the crime of attempted rape. He was found guilty of party to the crime of rape. The defendant argues, because Jones was acquitted on the crime of attempted rape, that issue has been litigated and the crime found not to have occurred; therefore, he cannot be tried and convicted of being a party to that crime.

The defendant argues that the state's prosecution in this case was barred by the double jeopardy provisions of the Wisconsin and United States Constitutions through the doctrine of collateral estoppel.[1] The defendant con-

[1] The basic principle of collateral estoppel is stated in Restatement of *Judgments*, sec. 68 (1942): "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action."

cedes that the issue of whether his prosecution in this case was barred by the doctrine of collateral estoppel was not raised either prior to trial or in postconviction motions filed by trial counsel. The defendant also recognizes that the issue may not be raised in this court as a matter of right. "Defenses and objections based on defects in the institution of proceedings must be raised before trial by motion or be deemed waived." *Lampkins v. State,* 51 Wis.2d 564, 570, 187 N.W.2d 164 (1971); Sec. 971.31(2), Stats.[2] Nevertheless, the defendant requests the court to decide what he asserts to be an important constitutional question because it is in the interests of justice to do so and because there are no factual issues for a trial court to decide.

In *Bradley v. State,* 36 Wis.2d 345, 153 N.W.2d 38, 155 N.W.2d 564 (1967), an eighteen-year-old mother had confessed to murdering her two infant children, and this court reviewed the voluntariness of that confession. For the first time in this court an issue was raised as to whether a guardian *ad litem* should have been appointed for the defendant to appear for her prior to and during the course of the trial. On this issue, the court said:

"This question was raised for the first time in the briefs that are before us on this appeal. We have frequently said that even the claim of a constitutional right

[2] Sec. 971.31(2), Stats., provides: "Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. The motion to suppress evidence shall be so entertained with waiver of jeopardy when it appears that the defendant is surprised by the state's possession of such evidence."

will be deemed waived unless timely raised in the trial court. *Cordes v. Hoffman* (1963), 19 Wis.2d 236, 120 N.W.2d 137; *Goyer v. State* (1965), 26 Wis.2d 244, 131 N.W.2d 888; *Rafferty v. State* (1966), 29 Wis.2d 470, 138 N.W.2d 741. We have, however, concluded that this court may nevertheless decide a constitutional question not raised below if it appears in the interests of justice to do so and where there are no factual issues that need resolution. There are none which would preclude us from considering the defendant's claimed right to have a guardian *ad litem.* However, under the facts of this case we fail to see that a meritorious argument has been presented." *Id.* at 350–359a.

The rule stated in *Bradley* has been consistently followed by this court. *See: State v. Doyle,* 40 Wis.2d 461, 465, 162 N.W.2d 60 (1968); *Flowers v. State,* 43 Wis.2d 352, 362–63, 168 N.W.2d 843 (1969); *State v. Clarke,* 49 Wis.2d 161, 174, 181 N.W.2d 355 (1970); *State v. McDonald,* 50 Wis.2d 534, 537–39, 184 N.W.2d 886 (1971); *State v. Trailer Service, Inc.,* 61 Wis.2d 400, 408, 409, 212 N.W.2d 683 (1973); *Madison v. State,* 64 Wis.2d 564, 571–73, 219 N.W.2d 259 (1974); *State v. Lambert,* 68 Wis.2d 523, 533, 229 N.W.2d 622 (1975); *Ramaker v. State,* 73 Wis.2d 563, 570, 243 N.W.2d 534 (1976); *State v. Williamson,* 84 Wis.2d 370, 379, 267 N.W.2d 337 (1978). A like rule has been applied in the federal courts:

"In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160 (1936).

We are not persuaded that consideration of this issue is necessary to the fairness, integrity, or public reputation of the judicial proceedings.

"With the current tremendous increase of appeals, this court does not have the time or inclination to spend time considering objections resulting from finecombing the record and second thoughts which might have been raised in the trial court but were waived *excepting in most unusual circumstances which go directly to the issue of guilt.*" (Emphasis added.) *Day v. State,* 52 Wis.2d 122, 125, 187 N.W.2d 790 (1971).

Similarly, we recently stated that the rule of *Bradley v. State, supra,* has been applied "only to evidentiary errors which have a direct constitutional basis, such as the admission of evidence derived from an illegal search and seizure, illegal identification testimony; involuntary self-incriminating statements; use of ex parte evidence." (Citations omitted.) *State v. Williamson, supra* at 379–80. These are matters which indeed affect "the substantial justice of the trial," *State v. Lambert, supra* at 533, and affect the trier of fact's determination of guilt. Accordingly, this court has declined to address claims not raised in the trial court which do not impugn the integrity of the determination of guilt but assert instead that the trial of the defendant should not have commenced. *See, e.g., State ex rel. La Follette v. Moser,* 30 Wis.2d 56, 139 N.W.2d 632 (1966), *State ex rel. La Follette v. Raskin,* 30 Wis.2d 39, 45, 139 N.W.2d 667 (1966) (failure of probable cause to arrest); *Kushman v. State ex rel. Panzer,* 240 Wis. 134, 139, 2 N.W.2d 862 (1942) (insufficiency of the complaint). Our consideration of such matters not raised in the trial court as in this case would give the defendant an opportunity to hear his verdict, and if adverse, seek reversal and claim jeopardy had attached. "Chaos in the administration of justice and lack of legal economy and orderly procedure in criminal suits will result if defense counsel can sit back . . . and later seek an acquittal or a new trial on the ground a violation of a constitutional right was involved." *State v. McDonald,*

*supra* at 539–40. Had the defendant raised his claim in the trial court at or before trial, the alleged constitutional infirmity may have been remedied by amendment[3] or dismissal of the charges. *See: Cappon v. O'Day,* 165 Wis. 486, 490, 162 N.W. 655 (1917). Additionally, the defendant's failure to raise his claim at trial deprived this court of the informed consideration of the trial judge on the matter.

With regard to the defendant's specific claim, we are not alone in our conclusion that the defendant's failure to raise the issue of collateral estoppel at trial precludes its assertion on appellate review. "Unless the defendant establishes a sufficient record in the trial court as to the issues necessarily determined in the prior proceeding, he is barred from raising the issue of collateral estoppel on appeal." *United States v. Lasky,* 600 F.2d 765, 769 (9th Cir. 1979); *See: United States v. Smith,* 446 F.2d 200, 203 (4th Cir. 1971); *United States v. Friedland,* 391 F.2d 378, 381 (2nd Cir. 1968).

The defendant claims there was insufficient evidence produced at trial to sustain the defendant's conviction of the crime of party to the crime of attempted rape. On

---

[3] Sec. 971.29, Stats., provides: **"Amending the charge. (1)** A complaint or information may be amended at any time prior to arraignment without leave of the court.

"(2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

"(3) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial."

review of a conviction in a criminal case, the test of the sufficiency of the evidence is whether the evidence adduced, believed, and rationally considered by the finder of fact was sufficient to prove the defendant's guilt beyond a reasonable doubt. *Kohlhoff v. State*, 85 Wis.2d 148, 153, 270 N.W.2d 63 (1978). In reviewing the record, this court will not retry the case and need not be equally convinced of the guilt of the defendant beyond a reasonable doubt. *State v. Tarrell*, 74 Wis.2d 647, 660, 247 N.W.2d 696 (1976). The test only requires that this court be satisfied that the finder of fact on the credible evidence submitted could find the defendant guilty beyond a reasonable doubt. *State v. Clark*, 87 Wis.2d 804, 813–14, 275 N.W.2d 715 (1979).

The defendant in this case was convicted of being a party to the crime of attempted rape. The defendant concedes there is credible evidence to support the proposition that Jones attempted to rape P. B. but vehemently asserts there is no evidence that he aided and abetted Jones. In *Roehl v. State*, 77 Wis.2d 398, 407, 253 N.W.2d 210 (1977), the court held:

"[W]here one person *knew the other was committing a criminal act*, he should be considered a party thereto when he *acted in furtherance of the other's conduct*, was aware of the fact that a crime was being committed, and *acquiesced* or participated in its perpetration." (Emphasis added.)

There was testimony by P. B. that the defendant knew and acquiesced in Jone's having sexual intercourse with her. She testified that the defendant, after having sexual intercourse with her without her consent, told Jones "Now, Goldie, man, it's your turn." P. B. testified that the defendant was the one who pulled her clothes off and also brought her against her will to the apartment where the act took place. This conduct by the defendant aided

Jones in his attempt to have sexual intercourse with P. B. without her consent. The fact that defendant left the bedroom at the time Jones attempted to have sexual intercourse with P. B. does not prevent him from being a party to the crime: "It is not necessary that each defendant be present at the scene of the crime." *Id.* at 408.

The defendant testified that he did not have sex or assist Jones in having sex with P. B. This testimony conflicted with P. B.'s testimony. In *Johnson v. State,* 55 Wis.2d 144, 148, 197 N.W.2d 760 (1972), we said: "Where direct testimony is in dispute the credibility of the various witnesses is within the exclusive province of the trier of fact." The jury was entitled to choose to believe P. B.'s testimony rather than that of the defendant. There was sufficient evidence to sustain the verdict that the defendant was guilty beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.