STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael F. BOSHCKA, Defendant-Appellant.†

Court of Appeals

*Nos. 92–0287, 92–0288, 92–0289. Submitted on briefs September 10, 1992.—Decided December 17, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review pending.

630

For the defendant-appellant the cause was submitted on the briefs of *Suzanne Hagopian,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.    Michael J. Boshcka appeals from a judgment convicting him of eight separate felonies, all involving his former wife, S.F.: sexual assault (three counts); intimidation of a victim; carrying a concealed weapon; solicitation to commit first-degree intentional homicide; and being a party to the crimes of robbery and auto theft.

The sexual assault, intimidation and concealed weapon charges were based on S.F.'s testimony that Boshcka came to her apartment one evening, forced her to engage in several sexual acts over a period of several hours, and threatened to kill her if she called the police. She also stated that, in the days that followed, Boshcka made several telephone threats to her. He was eventually arrested outside her apartment carrying a concealed weapon. The solicitation, robbery and auto theft charges were based on evidence that Boshcka solicited a fellow jail inmate, James Stanley, to kill S.F. and that Stanley went to S.F.'s apartment while on work release, beating her and stealing her car. Follow-

ing his conviction on the charges, Boshcka was sentenced to a total of sixty-three years in prison.[1]

He raises four issues on appeal: (1) whether he was denied due process when the trial court used a pattern jury instruction on credibility which had since been replaced with a revised version; (2) whether the trial court committed reversible error by allowing into evidence S.F.'s hearsay statements concerning the sexual assaults; (3) whether he was denied his constitutional right to the assistance of counsel when the trial court failed to consult with defense counsel before denying the jury's request for access to a trial exhibit during deliberations; and (4) whether the trial court's erroneous statement to the jury that Boshcka had five prior convictions, when in reality he had only four, denied him a fair trial. We resolve all issues against Boshcka and affirm the judgment. Other facts will be discussed below.

## I.   The Jury Instruction

One of the instructions on witness credibility given by the trial court was Wis J I—Criminal 310, which states:

> [The defendant] is directly interested in the result of the trial. In determining the weight to be given to the testimony of the defendant, it is proper for you to take such interest into consideration . . . . You have a right to consider his situation, his interest in the result of the trial, [and] the temptation

---

[1] Boshcka received three ten-year prison terms for the sexual-assault convictions, four years on the victim intimidation charge, one year for carrying a concealed weapon, sixteen years for solicitation to commit murder, ten years for robbery and two years for auto theft. All sentences were ordered to be served consecutively.

which may exist under the circumstances to testify falsely . . . .

■

Boshcka argues first that the instruction violates his right to due process of law because it "singles him out" as a person not to be trusted. However, the supreme court has upheld the instruction over constitutional objections, concluding that it neither "direct[s] the jury to disbelieve the defendant" nor otherwise denies the defendant a fair trial. *Thompson v. State*, 83 Wis. 2d 134, 148, 265 N.W.2d 467, 474 (1978).

Boshcka acknowledges the *Thompson* decision but argues that the Wisconsin Criminal Jury Instructions Committee expressed its disapproval of the instruction by withdrawing it in 1979, and that this action somehow supplants or supersedes the supreme court's holding in *Thompson*. He does not elaborate further on the argument and we reject it.

The committee withdrew the instruction because it concluded that "it is preferable to include reference to the credibility of the defendant in the instruction on credibility of all witnesses." Wis J I—Criminal 310, Comment. The language suggested by the committee to be added to the general witness credibility instruction is as follows:

> Under the law, a defendant is a competent witness and you should not discredit the testimony merely because the defendant is charged with a crime. The defendant's testimony should be weighed as the testimony of any other witness; considerations of interest, appearance, manner, and other matters bearing upon credibility apply to the defendant in common with all witnesses. Wis J I—Criminal 300.

635

The change appears to be more one of style and wording than of substance. The supreme court, in *Thompson*, expressly approved the former version of the instruction, and we decline Boshcka's invitation to disregard that decision. Indeed, as we have often said, we are bound by decisions of the state's highest court. *State v. Olsen*, 99 Wis. 2d 572, 583, 299 N.W.2d 632, 638 (Ct. App. 1980).

Alternatively, Boshcka argues that the trial court exceeded its discretion by giving the replaced instruction. We disagree.

A trial court has "broad discretion" in instructing the jury. *White v. Leeder*, 149 Wis. 2d 948, 954, 440 N.W.2d 557, 559 (1989). That discretion extends to both the language chosen by the court and the emphasis given to that language. *State v. Vick*, 104 Wis. 2d 678, 690, 312 N.W.2d 489, 495 (1981).

The limited scope of our review of discretionary rulings is well settled. Generally, "[we] will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

To determine whether the trial court properly exercised its discretion in a particular matter, we look

first to the court's on-the-record explanation of the reasons underlying its decision. And if that explanation indicates that the court "looked to and considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree." *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991) (footnote omitted).

■

Boshcka argues that the trial court exceeded its discretion in giving the instruction because it based its decision to do so on its "conclu[sions]" that: (1) a defendant's testimony must be viewed "with particular caution" when the state "chooses to rely on the uncorroborated testimony of an accomplice, with whom the state has made a sweet deal"; and (2) when the charges in a case are "particularly serious," it is proper to "cast[ ] doubt upon the veracity of the defendant's considerations." Where the court's exercise of discretion is based upon an error of law, it acts "beyond the limits of discretion" and its decision cannot stand. *State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968). That is not the case here, however.

■

First, Boshcka has not referred us to any place in the trial transcript where the court stated any such "conclusions," and we have said many times that we will not consider arguments unsupported by citations to the record, for it is not our duty to "sift and glean the record" to find facts to support a party's argument. *Keplin v. Hardware Mut. Casualty Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964).

Second, the state points out that the trial court chose to give the instruction after considering the committee's withdrawal of the older version—which the trial court properly concluded amounted only to a determination by the committee that it would be "preferable" to include reference to the defendant's credibility in the general witness credibility instruction—and reasoned that giving the former Wis J I—Criminal 310 would strike a "better balance" with the pattern instruction on the testimony of accomplices than would the "new" paragraph in the general credibility instruction. The court thus exercised its discretion based on a correct assessment of the effect of the withdrawal of Instruction 310 and the supreme court's decision in *Thompson*; because we cannot say it reached an unreasonable result, we may not interfere with its determination.

## II. Hearsay Evidence

Boshcka claims that he is entitled to reversal of the sexual assault convictions because they were based, in part at least, on inadmissible hearsay evidence offered by Gidget Krueger, S.F.'s job supervisor, and William Hammes, Boshcka's parole agent.[2]

---

[2] He raises a similar challenge to the testimony of a La Crosse police detective, to whom S.F. recounted the details of Boshcka's assaults on the following day. The detective, Joseph Dunham, stated that S.F. came to the station with Hammes and another parole agent and reported the rape. He testified at some length—and without any objection from Boshcka—as to S.F.'s description of the assault.

Boshcka concedes that by failing to object to Dunham's testimony, he has waived any objection to its admissibility. *See Caccitolo v. State*, 69 Wis. 2d 102, 114, 230 N.W.2d 139, 146

Krueger testified that shortly after arriving at work—approximately three hours after Boshcka had left her apartment, threatening to kill her if she reported the assaults—S.F. told Krueger she could not work that day because she had been sexually assaulted sometime earlier. Krueger stated that S.F. was in an excited and agitated state—appearing to be "real shook up"—while recounting the assaults. Hammes testified that, at a time some four to five hours after the assaults, S.F. told him "that . . . Boshcka had raped her several occasions the night before." According to Hammes, S.F. was crying and "trembling" and "appeared to be very upset" while telling him of the incident.

"A statement relating to a startling event . . ., made while the declarant was under the stress of excitement caused by the event or condition," is admissible as an exception to the hearsay rule. Section 908.03(2), Stats. For a statement to be considered an "excited utterance," two elements must coalesce: (1) there must be a "startling event or condition" and (2) the declarant must have made the statement relating to the startling event or condition while "under the

---

(1975) (unobjected-to hearsay statements "are not reviewable on appeal"). He argues, however, that we should exercise our discretionary authority under sec. 752.35, Stats., to order a new trial in the interest of justice because admission of the Dunham testimony resulted in the real controversy not being tried.

We decline to do so. As will be seen, the trial court properly allowed the other witnesses, Krueger and Hammes, to testify as to what S.F. told them about the assaults. Thus, even if inadmissible, Dunham's testimony was merely cumulative and cannot be said to have "so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried." *State v. Penigar*, 139 Wis. 2d 569, 578, 408 N.W.2d 28, 32-33 (1987).

stress of excitement caused by the event or condition." *Muller v. State*, 94 Wis. 2d 450, 466, 289 N.W.2d 570, 578 (1980).

Here, the first element—the existence of a "startling event"—is met by the nature of the assaults themselves.

The second requirement, that the declarant must have made the statement while under the stress of the excitement caused by the event, was discussed in *Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 56-57, 252 N.W.2d 81, 84-85 (1977):

> The excited utterance exception . . . is based upon spontaneity and stress which endow such statements with sufficient trustworthiness to overcome the reasons for exclusion of hearsay. In determining whether a statement qualifies as an excited utterance, the important factors [to consider] are timing and stress . . . .
>
> "It must be shown that the statement was made so spontaneously or under such psychological or physical pressure or excitement that the rational mind could not interpose itself between the spontaneous statement or utterance stimulated by the event and the event itself." (Citations and footnote omitted.)

For the purpose of determining the admissibility of hearsay statements under the excited utterance exception, the interval between the incident and the declaration is not measured by the mere lapse of time but by the duration of the excitement the event caused. *Muller*, 94 Wis. 2d at 467, 289 N.W.2d at 578.

S.F.'s statements to Krueger and Hammes were made within a few hours after she had suffered

repeated and aggravated sexual assaults and had been threatened with death should she report them. Also, the statements were made to the first people S.F. talked to following the incident. Both testified that she appeared frightened, upset and agitated as she told them of the assaults.

Under these circumstances, we conclude that the witness's testimony was properly admitted under the excited utterance exception to the hearsay rule.[3]

[3] Boshcka suggests that such a conclusion is flawed because it is premised on case law that only applies to statements made by children victims. We disagree.

There is a "special species" of the excited utterance rule that is applied to statements made by young children alleged to have been the victims of sexual assault. *See State v. Padilla*, 110 Wis. 2d 414, 418, 329 N.W.2d 263, 266 (Ct. App. 1982). In general, the special rule allows admission of statements by child victims "for a longer period after the incident than with adults." *Id.* at 419, 329 N.W.2d at 266. It is enough to say, in response to Boshcka's argument, that, as may be seen from this opinion, we rely solely on general statements of the excited utterance rule—not on the "special" variant of the rule applicable to child sexual assault cases.

As we have noted, the basic rule focuses on the intensity and continuation of the stress, not the amount of time elapsing since the incident. And given S.F.'s description of the assaults—which the jury obviously believed—and the witness's acknowledgement of S.F.'s agitated and excited demeanor as she related the events to them, it is apparent that the stress of the incident continued at least to the time she made the statements. And, as cases from other jurisdictions indicate, three to four hours is not an overlong time for application of the basic excited utterance rule to adult victims of sexual assault. *See State v. Crowhurst*, 470 A.2d 1138, 1145 (R.I. 1984) (three hours); *State v. Wilson*, 532 P.2d 825, 827-28 (Or. Ct. App. 1975) ("over one hour"); *State v. Flett*, 699 P.2d 774, 780-81 (Wash. Ct.

### III.  The Jury's Question

Boshcka next argues that we should reverse his convictions because he was denied his constitutional right to assistance of counsel when the trial court failed to consult with him and his attorney before responding to a jury request during deliberations. Again, we disagree.

While deliberating, the jury sent a note to the court requesting that a copy of the medical report prepared after S.F.'s physical examination be sent to the jury room. Without consulting with defense counsel or the prosecutor, the trial court denied the request. A short time later, the court informed both parties of the request and, noting that the subject had "already [been] discussed on the record," stated that it had declined to send the exhibit in because it contained "irrelevant information." Boshcka's counsel neither objected to, nor commented on, the court's actions or statements. The jury continued its deliberations for another six hours before returning a verdict.

The state concedes that the court erred in answering the jury's question without first consulting with defense counsel. *See State v. Bjerkaas*, 163 Wis. 2d 949, 957, 472 N.W.2d 615, 618 (Ct. App. 1991). It argues, however, that Boshcka waived his right to review by not raising an objection at the time he was informed of the error. We agree.

As we have discussed above, unobjected-to errors are generally considered waived, and the rule applies to both evidentiary and constitutional errors. *Maclin v.*

App. 1985) (two and one-half to seven hours); *State v. Fleming*, 621 P.2d 779, 781-82 (Wash. Ct. App. 1980) (three to four hours).

*State*, 92 Wis. 2d 323, 328-29, 284 N.W.2d 661, 664 (1979). While we may, in our discretion and if necessary to see that justice is done, consider such claims, *id.* at 329, 284 N.W.2d at 664, we decline to do so here.

As indicated, when informed by the trial court of the jury's request and the court's response, Boshcka's counsel neither objected to the court's action nor requested that the exhibit be sent in. Nor did he comment on the subject at any time during the succeeding six hours during which the jury continued to deliberate its verdict.

The waiver rule is of long standing, and its purpose is to require a party to raise an objection at trial as soon as it becomes known so that it may be addressed with minimal disruption of the trial process. *Cappon v. O'Day*, 165 Wis. 486, 490-91, 162 N.W. 655, 657 (1917). It also serves to discourage possible defense strategies of foregoing the opportunity to correct alleged errors at trial in hopes of obtaining a new trial in the event of a guilty verdict.

Here, Boshcka and his attorney had ample time to respond to the court's denial of the jury's request. Indeed, the prosecutor even suggested to the court and defense counsel that relevant portions of the medical records might be read to the jury; and still counsel stood mute. We agree with the state that, on this record, Boshcka should not now be heard to complain that his own acquiescence in the court's action somehow prejudiced his case.

### IV. Boshcka's Prior Convictions

In determining the number of Boshcka's prior convictions that would be admissible to impeach his

credibility, the court erroneously considered a prior conviction for armed robbery while masked as two convictions, rather than one. As a result, the jury was informed that he had been convicted of crimes on five prior occasions, when the correct number was four. The state, conceding the miscalculation, maintains that any such error was harmless, and we agree.

■

An error will be considered prejudicial to a defendant if "there is a reasonable possibility that [it] contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1984). No such possibility exists in this case.

Taken in the context of a lengthy trial on ten charged crimes—several of them of an aggravated nature—in which the evidence of guilt was substantial, we see no possibility that this error affected the outcome. Indeed, Boshcka acknowledges that "[s]tanding alone, this error might not warrant reversal." We agree, and note that we have rejected his other claims of error.

We also note the supreme court's observation in *State v. Bowie*, 92 Wis. 2d 192, 202, 205, 284 N.W.2d 613, 617, 619 (1979), that a similar error (erroneous testimony that a defendant had four prior convictions when in reality he had only one) was harmless because the standard instruction on prior convictions as impeachment "does not direct the jury to give the number of convictions special consideration," and thus "[t]he jury would have received the [same] instruction" no matter how many convictions existed or were said to exist.

The same situation exists here: the trial court gave the standard instruction on impeachment of a defendant by prior convictions (Wis J I—Criminal 327) and

would have done so whether the correct number of prior convictions was four or five. The difference between four and five is, in our view, of no consequence to the jury's assessment of Boshcka's credibility and his guilt or innocence on the charges.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). A criminal defendant is not entitled to a perfect trial, only a fair one. *State v. Crandall*, 133 Wis. 2d 251, 259, 394 N.W.2d 905, 908 (1986). Because Boshcka did not receive a fair trial, I would reverse and grant him a new trial.

First, the jury was instructed that it was to weigh Boshcka's testimony according to Wis J I—Criminal 310, which was withdrawn by the Wisconsin Criminal Jury Instructions Committee in 1979. The Wisconsin Supreme Court concluded in *Thompson v. State*, 83 Wis. 2d 134, 148, 265 N.W.2d 467, 474 (1978), that the instruction did not deny the defendant a fair trial. However, the committee concluded that "it is preferable to include reference to the credibility of the defendant in the instruction on credibility of all witnesses." Comment to Wis J I—Criminal 310 (1991). That reference is included in Wis J I—Criminal 300 (1991). The Wisconsin Supreme Court has not had occasion since the committee's action to exercise its supervisory authority to instruct trial courts as to which instruction is preferable.

Second, the jury heard inadmissible hearsay testimony which corroborated the testimony of Boshcka's wife that Boshcka had sexually assaulted her. Boshcka's parole officer and a police detective testified that S.F. told each of them that Boshcka had raped her four to six hours earlier. Further, S.F.'s work supervisor testified that S.F. told her she had been sexually

assaulted and that one of her children might have witnessed the assault. S.F.'s out-of-court statements were not admissible as excited utterances. The children's exception for out-of-court statements does not apply to alleged adult sexual assault victims. Statements of a declarant who has the opportunity and capacity to review the incident and calculate the effect of his or her statement do not qualify as excited utterances. *Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 58, 252 N.W.2d 81, 85 (1977); 2 J. STRONG, MCCORMICK ON EVIDENCE 272, at 216 (4th ed. 1992). S.F. had the opportunity and capacity to influence the result she wished by her statements. The United States Supreme Court has said that "the circumstances surrounding the making of [an excited utterance] provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." *Idaho v. Wright*, 497 U.S. 805, —, 111 L.Ed.2d 638, 655 (1990).

Here, it cannot be said that the circumstances surrounding the making of S.F.'s out-of-court statements "provide sufficient assurance that she spoke the truth." Boshcka testified that his sexual contacts with his wife were consensual. There were no witnesses to the alleged assaults, other than S.F.'s daughter, who only heard noises outside her bedroom and whose testimony is inconclusive. The medical evidence was inconclusive. S.F. had a motive to lie: the couple was estranged; S.F. testified that on the night of June 27, 1990, Boshcka came home drunk, "choke[d]" her and "punched her" in the face, sending her to the hospital; and in early August 1990, she contacted Boshcka's parole officers who imposed a no-contact condition on Boshcka. This case became a credibility contest. It was unfair to allow the state to bolster S.F.'s testimony with her out-of-court statements.

Third, Boshcka was denied his right to assistance of counsel and to be present at all stages of his trial when the trial court denied the jury's request to see the medical report of S.F.'s physical examination, without advising Boshcka or his counsel of the request until after the court denied the request. Boshcka should have been allowed to argue that the jury's request be honored.

Finally, the trial court ruled incorrectly that Boshcka had been convicted of five crimes, rather than four. Boshcka therefore testified, when asked, that he had been convicted of five crimes. The state concedes the error but argues it was harmless. I agree that by itself the error was harmless. However, the cumulative effect of the several errors was to deny Boshcka a fair trial. I would give him one.