Daniel SCHNELLER, a minor, and his parents, Thomas and Cheryl Schneller, Plaintiffs-Appellants,†

v.

## ST. MARY'S HOSPITAL MEDICAL CENTER, W.C. Mussey, M.D., Defendants-Respondents,

### Joel KAUFMAN, M.D., and V.J. Moore, M.D., Defendants.

Court of Appeals

*No. 89-0541. Submitted on briefs December 8, 1989.—Decided March 15, 1990.*

(Also reported in 455 N.W.2d 250.)

† Petition to review granted.

For the plaintiffs-appellants the cause was submitted on the briefs of *Robert J. Gingras* and *Mary E. Kennelly* of *Fox, Fox, Schaefer & Gingras, S.C.* of Madison.

For the defendant-respondent St. Mary's Hospital Medical Center the cause was submitted on the brief of *Curtis C. Swanson* and *Joy L. O'Grosky* of *Axley Brynelson* of Madison.

For the defendant-respondent W.C. Mussey, M.D., the cause was submitted on the brief of *Bonnie A. Wendorff, Bradway A. Liddle, Jr.,* and *Catherine M. Rottier* of *Boardman, Suhr, Curry & Field* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.    Daniel Schneller, a minor, and his parents, Thomas and Cheryl Schneller, appeal from an order dismissing their medical malpractice claim against St. Mary's Hospital Medical Center and three doctors (collectively, St. Mary's). The issues are: (1) whether sec. 801.15(2)(a), Stats., which requires a party filing an untimely motion to extend a time deadline to show "excusable neglect" in order to gain an extension of the deadline, is limited to time limits imposed by statute or whether it is equally applicable to limits imposed by court order; and (2) whether the trial court abused its discretion when it declined to permit the Schnellers to name a liability expert after expiration of the time set in the pretrial order for designation of experts.

We conclude that the excusable neglect standard of sec. 801.15(2)(a), Stats., applies to untimely applications for relief from court-ordered deadlines as well as those established by statute or rule and, further, that the court

did not abuse its discretion in denying the Schnellers' request to extend the deadline it had set for production of expert witnesses. We therefore affirm the order.

The Schnellers initiated the proceedings leading up to this action in December, 1985, when they filed a claim with the Wisconsin Patients Compensation Panel. In July, 1986, following the panel's abolition, the Schnellers filed an action in circuit court alleging that their son, David, sustained injuries during his birth at St. Mary's on December 30, 1978.

On September 2, 1987, the trial court issued a pre-trial order requiring the Schnellers to name all expert witnesses by February 29, 1988. The order warned that failure to comply with its terms "shall be considered cause for imposing sanctions which may include dismissal . . . or barring the presentation of testimony or . . . evidence at trial." A settlement conference was scheduled for September, 1988.

The Schnellers filed an expert witness list on the last day, February 29, 1988. The list included thirteen damages experts but no liability experts. The Schnellers also moved the court to extend the already-expired expert witness deadline an additional thirty to forty-five days. They never pursued the motion, however.

On March 8, 1988, Schnellers' attorney and St. Mary's attorney entered into a courtesy agreement whereby the Schnellers agreed to produce a liability expert for deposition by April 19, 1988. When the Schnellers still had not produced the witness by April 6, St. Mary's counsel warned them that they could not prosecute a malpractice action without a liability expert, and that St. Mary's would move for summary judgment if the deadline was not met. The Schnellers neither named nor produced the witness, and they never applied to the court for further extensions of the time limit.

St. Mary's then moved to preclude the Schnellers from naming additional experts. At the hearing on the motion and with no prior notice to the court or opposing counsel, Schnellers' attorney sought and was granted permission to withdraw from the case, and the trial court postponed the hearing for ten days to allow the Schnellers' new counsel to file motions. On May 4, 1988, substitute counsel filed a motion which, among other things, requested an additional sixty days to name expert witnesses.

The court heard both parties' motions on June 10, 1988, and, in a lengthy opinion issued a few months later, denied the Schnellers' motion to enlarge time and granted St. Mary's motion to preclude the Schnellers from naming additional witnesses. St. Mary's then moved for summary judgment on grounds that the Schnellers had failed to substantiate their claim with expert medical testimony. The Schnellers did not oppose the motion and the trial court granted it in an order issued on February 1, 1989.

The Schnellers argue that the trial court erred in relying upon the excusable neglect standard set forth in sec. 801.15(2)(a), Stats., when it denied their motion for additional time to name experts. The statute provides that:

> When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms . . .. If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.

The Schnellers contend that sec. 801.15(2)(a) governs the enlargement of time only for "statutorily prescribed

time periods" and not enlargement of time deadlines set by court order. We disagree.

When construing a statute, our first resort is to the language of the statute itself. *Abraham v. Milwaukee Mutual Insurance Co.,* 115 Wis. 2d 678, 680, 341 N.W.2d 414, 416 (Ct. App. 1983). The language of sec. 801.15(2)(a), Stats., does not limit its application to statutory deadlines or distinguish in any way between time limits set by statute or by court order. It speaks in broad terms, stating that "[w]hen an act is required to be done at . . . a specified time, the court may order the period enlarged . . .."

We consistently have required parties to show excusable neglect for failure to comply with pretrial orders. In *Carlson Heating, Inc. v. Onchuck,* 104 Wis. 2d 175, 311 N.W.2d 673 (Ct. App. 1981), we affirmed the trial court's dismissal of a case based on the plaintiff's failure to furnish the defendant with a list of trial witnesses. We recognized that the burden was on the aggrieved party to show a "timely, clear and justifiable explanation" for his or her noncompliance with such an order and concluded that the record supported the trial court's finding that counsel's failure to comply was inexcusable. We explained that:

> [I]f pretrials are to be of use in expediting court proceedings and assuring proper administration of justice, the trial court must be firm in enforcing its orders. The trial court gave notice to counsel that noncompliance with the pretrial order shall be considered cause for dismissal on the merits. The dismissal of an action where counsel fails to comply with an important term of a pretrial order without justifiable excuse is not an extreme measure if the trial courts are to be encouraged to facilitate and expedite the

370

trials of their cases. *Carlson,* 104 Wis. 2d at 181–82, 311 N.W.2d at 677.

In *Trispel v. Haefer,* 89 Wis. 2d 725, 733, 279 N.W.2d 242, 245 (1979), the supreme court affirmed an order dismissing a case for the plaintiff's failure to produce a medical report as required by a pretrial order on grounds that the plaintiff had not shown a clear and justifiable excuse for the failure. In so concluding, the court noted that a clear and justifiable excuse is required because it is the duty of trial courts, independent of statute, to discourage protraction of litigation and to refuse their aid to those who negligently or abusively fail to prosecute their actions.[1]

The Schnellers do not discuss *Trispel* or *Carlson Heating.* They suggest instead that other statutes, notably sec. 802.10(3)(b), Stats., dictate a lesser standard, and that the trial court erred in placing "too onerous a burden" on them. Section 802.10 deals with "calendar practice." Subsection (3)(a) requires the court to set the times by which pretrial matters such as default judgment motions, discovery, impleader, amendment of pleadings, and pretrial motions must be completed. Subsection (3)(b) requires those times to be memorialized in a written order and states that "[i]f at any time it appears that such schedules cannot reasonably be met, the judge may amend the order upon timely motion of any party." The

---

[1] The Schnellers rely on *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 326 N.W.2d 727 (1982), and *Oostburg State Bank v. United Savings & Loan,* 125 Wis. 2d 224, 372 N.W.2d 471 (Ct. App. 1985), *aff'd,* 130 Wis. 2d 4, 386 N.W.2d 53 (1986), for the proposition that sec. 801.15(2)(a), Stats., applies only to statutorily prescribed time periods. We note that in neither of those cases did the court discuss whether sec. 801.15(2)(a), Stats., applied to court-ordered deadlines, thus we do not consider them to be dispositive.

Schnellers read sec. 802.10(3)(b) as abrogating any need on the part of a moving party—at any time—to show cause for extending a time limit established by pretrial order. We read it differently.

To construe the statute as the Schnellers do would directly contradict *Trispel, Carlson Heating,* and similar cases. We read the statutory language as simply giving the court discretion to amend the scheduling order. The *manner* in which that discretion is exercised, however, is found earlier in the statute: "Any order made under this section may . . . upon motion of a party *for cause shown,* be amended." Sec. 802.10(2), Stats. (emphasis added).

In addition, we consider it significant that sec. 802.10, Stats., concerns motions to *amend* schedules for the several pretrial matters mentioned in the statute whenever it appears that they "cannot . . . be met." The language plainly contemplates pre-expiration amendments and, as we have noted, it expressly states that such amendments may be made only upon a showing of cause. Section 801.15(2), Stats., which deals specifically with the extension of time periods also requires a showing of cause for extension motions made prior to expiration of the deadline, but it imposes a higher standard—excusable neglect—where the motion is made "after . . . expiration of the specified time . . .." If there is any conflict between secs. 802.10 and 801.15—and we see none—the latter, as the more specific statute, should control.

We conclude, therefore, that under sec. 801.15(2)(a), Stats., to succeed on a motion to enlarge time, whether the deadline is set by statute or court order, a party must show "cause" if the motion is timely filed and "excusable

neglect" if the motion is filed after the deadline has passed. And the court's findings in this case demonstrate that the Schnellers demonstrated neither in seeking to enlarge the time in which to name expert witnesses:

> Plaintiffs' original counsel made no serious attempts to meet the specified deadlines. While plaintiffs' original counsel moved the court for an extension of time, that motion was never pursued. Similarly, plaintiffs' counsel ignored the courtesy agreement between himself and counsel for the defendants wherein he agreed to produce a liability expert witness for deposition by mid-April. Finally, even though plaintiffs' original counsel was aware that [he was] subject to a court imposed deadline for responses to defendants' Motion for Partial Summary Judgment [he] made no effort to respond within the prescribed time period. Thus, to grant plaintiffs' motion would encourage dilatory behavior by counsel.[2]

The Schnellers also argue that the trial court abused its discretion when it denied their motion because the court "knew" that the denial would likely result in the dismissal of their case, and also that "[St. Mary's] could not possibly be prejudiced" by an extension. According to the Schnellers, the abuse occurred when the court

---

[2]While not specifically argued by the Schnellers, we note that *Trispel* and other cases suggest that because dismissal—the practical result of the court's denial of the Schnellers' motion—is a harsh sanction, it will be granted for failure to obey pretrial orders only in "extreme circumstances" or in cases of "egregious conduct." *Trispel v. Haefer,* 89 Wis. 2d 725, 732, 279 N.W.2d 242, 245 (1979). The record and the trial court's findings and reasoning satisfy us that, even if made, any argument that the Schnellers' failure to comply with such an essential order was neither extreme nor egregious would necessarily fail.

failed to consider and balance their interests in a fair presentation of their case against the likelihood of prejudice to St. Mary's.

The trial court's decision that a party has not established sufficient cause to extend an ordered time deadline after its expiration involves the exercise of discretion, and we will not disturb that decision "unless an abuse of discretion is clearly shown." *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 470, 326 N.W.2d 727, 732 (1982). Because the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). This does not mean that discretionary powers are unbridled and unfettered—that trial courts are free to make unexplained choices among alternatives. *Argonaut Ins. v. LIRC,* 132 Wis. 2d 385, 391, 392 N.W.2d 837, 839 (Ct. App. 1986). Rather, the term contemplates a reasoning process which considers the applicable law and the facts of record, leading to a conclusion a reasonable judge could reach. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981).

We have no doubt that the trial court was well aware, as were the parties and as are we, that, except in exceptional circumstances not present here, failure to produce a liability expert is fatal to a suit for medical malpractice. Indeed, the court began its lengthy memorandum decision by noting the need to measure "the effect of granting or denying the relief," and the "prejudice to the nonmoving party," and recognized that "denying plaintiffs' Motion . . . may lead to the eventual dismissal of this lawsuit . . .." The court then considered the fact that the Schnellers had had nearly three years in which to come up with the necessary expert

witness, and yet had "made no serious attempts to meet the specified deadlines," and had never pursued any efforts to extend the deadline—all in the face of an order specifying dismissal as a sanction for violation of the time limits and St. Mary's threat to move for summary judgment dismissing the action upon their failure to produce the witness.

Noting (in another portion of the decision) that Daniel Schneller's injuries had occurred ten years earlier and that throughout the discovery period the Schnellers had "made no effort to respond [to the order] within the prescribed time period" and, further, that despite the passage of more than two years in litigation the Schnellers, by failing to locate an expert witness, had yet to put forth any basis for their action, the court stated:

> Plaintiffs and their attorneys have a responsibility to each other, to the persons they claim against, to the courts and to . . . society to have some idea and basis for their travels before they get so totally into the process.
>
> That responsibility, in this case, has not been fulfilled.
>
> Although this Court is not only mindful, but also sympathetic to having parties "have their day in court," there does come a time when, after days have stretched to weeks, months and years with no basis for a claim asserted and it is effectually admitted that such a basis has not been found, when, after extention [sic] of time to find such a basis have been [sic] accepted and still no basis found and when, even after the final Court direction to an end date for factual presentations, the plaintiffs attempt to further add to the record, the Court must call a halt.

In *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 255 N.W.2d 511 (1977), the supreme court upheld dismissal

of a plaintiff's personal injury action against an automobile manufacturer for violation of a pretrial order directing the production of evidence. The action was commenced in October, 1974, and the order to produce evidence, once extended, required production by June 13, 1975. The order stated that dismissal was a possible sanction for noncompliance. The evidence was not produced and, several days after the deadline had expired, the defendants moved to dismiss. The trial court granted the motion upon a determination that the plaintiffs had "not adequately explained" the failure to comply with the discovery order. Affirming, the supreme court noted the plaintiff's "callous disregard of responsibilities" to the court and the parties in the face of a "warning" that dismissal might follow any failure to comply with the order and concluded: "If the sanction of dismissal is not warranted by the circumstances of this case, then the Court can envisage no set of facts whereby that sanction should ever be applied." *Id.* at 269, 255 N.W.2d at 516, quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 641 (1976).

■■

In this case, the trial court considered the extreme effect of its decision on the Schnellers, as well as the nature of their conduct and its effect on St. Mary's and on the public interest in the orderly administration of justice. It was a considered decision, based on the facts of record and applicable law, and while it may be that we would have decided the motion differently, that is not the test; it is enough that a reasonable judge could have so concluded and we believe that is the case here.

Finally, we note that much of the Schnellers' brief is devoted to a discussion of *Alexander v. Riegert,* 141 Wis. 2d 294, 414 N.W.2d 636 (1987), where the supreme court ruled that the trial court abused its discretion when it

denied a motion to amend a scheduling order to allow additional witnesses and reopen discovery after the deadlines had passed. That case, characterized as "unusual" by the supreme court, centered around a last-minute substitution of counsel after the trial court ruled that the plaintiff's original attorney had to be disqualified because of a conflict of interest. The trial date was cancelled and the court denied the substitute attorney's request that he be allowed to name additional expert witnesses.

Reversing, the supreme court ruled that the trial court had abused its discretion by failing to consider several factors, which the court described only very generally as "plaintiffs' rights in presenting their case." *Alexander,* 141 Wis. 2d at 301, 414 N.W.2d at 639–40. Our reading of the full opinion indicates that the *Alexander* court was primarily concerned with the degree to which the prior attorney's conflict of interest had "tainted" the plaintiff's case. *Id.* at 299, 414 N.W.2d at 639. As here, the plaintiff had filed a witness list, which the supreme court characterized as containing, among other things, "an unexplained conflict between the doctors' opinions . . .." *Id.* Disagreeing with the trial court's determination that the first attorney's conflict of interest did not affect his "effective representation" of their interests, the supreme court felt that inadequate consideration had been given to the effect of that conflict on the rights "to which all litigants are entitled: the single-minded representation of an advocate devoted exclusively to their interests." *Id.* at 300, 414 N.W.2d at 639. Fearing that prior counsel's conduct may have "tainted the choice and extent of witnesses or the . . . proper evaluation of the plaintiffs' case," *id.* at 299, 414 N.W.2d at 639, the court reversed.

Here, there is no suggestion of any conflict of interest on the part of the Schnellers' first attorney, and they do not suggest that the substitution of counsel was anything other than voluntary. Indeed, the trial court remarked in its memorandum decision that "counsel was voluntarily substituted when the heat became not only apparent but real" and expressed concern that at that stage in the proceedings, and when faced with a "dispositive" motion, the plaintiffs should not be permitted to "salvage a lawsuit by mere substitution of counsel . . .." Thus, the substitution here has none of the implications that motivated the *Alexander* court. The prejudice to the Schnellers—the dismissal of their action—was due to their failure to meet the ordered deadlines and the fact that, a decade after the alleged negligent conduct and nearly three years into the lawsuit, they still had not come up with the medical testimony so essential to their claim.

This is not, as was *Alexander,* an "unusual" case involving a wholly "new situation . . . not contemplated in the original scheduling order." *Id.* at 299, 414 N.W.2d at 639. It is one involving, as the trial court found, an unexplained and persistent failure to comply with an order that went to the very heart of the Schnellers' case, and we do not see *Alexander* as at all persuasive. And to the extent, as the Schnellers stress, that the case requires consideration of the effects of its ruling on the plaintiffs' case, we are satisfied that the trial court adequately assessed that factor.

*By the Court.*—Order affirmed.

SUNDBY, J. *(dissenting).* I dissent from the majority's affirmance of the summary judgment in favor of St. Mary's Hospital Medical Center and Dr. W.C. Mussey. The trial court applied the wrong standard in

deciding the plaintiff's request to name a medical liability expert. Applying the correct legal standard, I conclude that the trial court abused its discretion in denying the plaintiff's request. Applying the incorrect standard—excusable neglect—I nonetheless conclude that the plaintiffs were entitled to their motion.

## I.

## APPLICATION OF SEC. 801.15(2)(a), STATS.

Section 801.15(2)(a), Stats., provides in part:

> When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms . . . .. If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.

This provision does not apply to calendar practice under sec. 802.10, Stats. Section 802.10(3)(b) provides:

> The judge shall issue a written order which recites the schedules established. Such order when entered shall control the course of the action, *unless modified as herein provided. If at any time it appears that such schedules cannot reasonably be met, the judge may amend the order upon timely motion of any party.* Whenever the judge shall determine that he [she] cannot reasonably meet the pretrial date or trial date established, he [she] may amend the order on his [her] own motion. [Emphasis added.]

A scheduling order may therefore be modified by the trial court under the following circumstances:

(1) Upon timely motion of any party, if it appears that such schedules cannot reasonably be met; and

379

(2)  Whenever the judge determines that he or she cannot reasonably meet the pretrial date or trial date.

The pretrial and trial scheduling procedures are self-contained in sec. 802.10(3), Stats.; sec. 801.15(2), Stats., has no application. Thus, the trial court erred in applying to the plaintiffs' motion the "excusable neglect" standard of sec. 801.15(2)(a). The court should have determined whether the scheduling order could reasonably be met. Of course, the trial court was free to impose sanctions for violation of the scheduling order. "Violation of a scheduling order is subject to s. 805.03." Sec. 802.10(3)(d), Stats. Under sec. 805.03, Stats., the trial court may make such orders "as are just." If the trial court, upon a party's or its own motion, wishes to go beyond a motion to amend a scheduling order and sanction a party or an attorney, it may do so if it applies the standard of egregious conduct required under sec. 805.03. *See* Judicial Council Committee's Note, Wis. Stats. Ann. sec. 805.03, (West 1977) and my dissent in *Monson v. Madison Family Institute, et al.,* No. 89-0314 unpublished slip op. (Wis. Ct. App. March 15, 1990).

We review the grant or denial of a motion to amend a scheduling order for abuse of discretion. *Alexander v. Riegert,* 141 Wis. 2d 294, 295, 414 N.W.2d 636, 637 (1987). "Abuse of discretion" is an unfortunate term. Abuse of discretion does not necessarily mean ulterior motive, arbitrary conduct, or willful disregard of the rights of a litigant. *Schneider v. Ruch,* 146 Wis. 2d 701, 704, 431 N.W.2d 756, 757-58 (Ct. App. 1988). A trial court abuses its discretion if it fails to apply the principles of law applicable to a situation. *Id.*

In *Alexander* the court concluded that the trial court abused its discretion in denying successor counsel's motion to amend the scheduling order "because it failed to consider the plaintiffs' interest in having a fair pres-

entation of their case." 141 Wis. 2d at 295, 414 N.W.2d at 637. The court did not require the Alexanders to show that their failure to timely name expert witnesses was the result of "excusable neglect," the standard which the trial court, and the majority, apply to the Schnellers' motion. The *Alexander* court reasoned:

> A new situation [substitution of counsel] developed which was not contemplated in the original scheduling order.
>
> The constraints of the scheduling order should yield to permit a trial of the true controversy between the parties with full exposition of all available relevant facts. The trial court has the authority to assess costs, if appropriate, against the parties seeking to amend the scheduling order, including additional attorney's fees caused by an amendment.

141 Wis. 2d at 299, 414 N.W.2d at 639.

The supreme court got it exactly right: a scheduling order is merely a device to control the flow of the case; its constraints must yield to permit the case to be heard. Imposing sanctions is another matter entirely.

The defendants attempt to distinguish *Alexander* because there, the trial court substituted counsel to avoid a potential conflict of interest. Here, counsel may have recognized that a real conflict of interest existed and voluntarily withdrew. Counsel knew that it was facing a possible malpractice suit if the trial court denied its motion to name an additional medical expert. The *sine quo non* of *Alexander* was not the disqualification of counsel by the court, but the development of a new situation not contemplated by the scheduling order.

The defendants suggest that the substitution of counsel may have been a ploy on the part of the Schnellers and their counsel to fit themselves into the *Alexander* framework. There is no evidence in the record to

support this assertion and we must reject it. *See McNeal v. Papasan,* 842 F.2d 787, 789–91 (5th Cir. 1988) (in the absence of evidence that plaintiff fired her counsel as a delaying tactic, delay caused by change of counsel did not warrant dismissal with prejudice).

The trial court therefore abused its discretion when it made the error of law of applying the sec. 801.15(2)(a), Stats., standard to a motion to amend a scheduling order.

## II.

## OTHER ABUSES OF DISCRETION

The trial court abused its discretion in several other critical respects. First, it failed to consider the Schnellers' interest in having a fair presentation of their case. Second, it failed to weigh the probative value of the proposed medical expert's testimony against the prejudice to the defendants.

> Forbidding a party to call a witness is a drastic measure in a trial, where truth is sought . . . .. "The object of the rule requiring the disclosure of the names of witnesses before trial is to enable the parties to discover the truth and to eliminate surprise, and the policy of discovering all the truth would be furthered by permitting the witness to testify after the court has postponed the testimony until the element of surprise has been eliminated."

*Fredrickson v. Louisville Ladder Co.,* 52 Wis. 2d 776, 784, 191 N.W.2d 193, 196–97 (1971) (quoting Annotation, 27 A.L.R.2d 737, 738, 739 (1953)). In *Fredrickson* there was no scheduling order, but there was an oral order of the judge requiring the respondents to reveal the name of their expert. They did not do so until the first

day of trial. The trial court ordered that the witness be made available to allow plaintiff's counsel to take his deposition, which was taken during trial.

The court recognized that a trial court has discretion to exclude the testimony of a witness if a party is prejudiced by opposing counsel's failure to inform him or her of the intent to call that witness. *Fredrickson,* 52 Wis. 2d at 782, 191 N.W.2d at 196. The court found, however, that the probative value of the witness's testimony outweighed any prejudice to the appellants. Here, there is nothing like the potential prejudice to the appellants in *Fredrickson.* No trial date had yet been set and the settlement conference was four months away from the time when the plaintiffs first identified their medical liability witnesses.

The trial court further abused its discretion when it based its decision on a finding of fact which is clearly erroneous. In its amplification of its findings and conclusions the court found that there was no arguable basis for the Schnellers' claim. Yet, in its findings of fact entered on February 2, 1989 the trial court found that the plaintiffs alleged that,

> The vaginal delivery of plaintiff Daniel Schneller on December 30, 1978 involved the use of forceps and a delay in time during which Daniel Schneller suffered severely from anoxia. Plaintiffs further allege that all the defendants . . . were negligent in that they failed to accurately diagnose the pre-delivery position and presentation of Daniel Schneller in a timely fashion, failed to adequately monitor the fetus'[s] vital signs; failure to timely perform a cesarean section on plaintiff Cheryl Schneller; failed to use appropriate delivery techniques and failed to adequately train, supervise and prepare resident doctors for delivery.

If proved at trial, these allegations would certainly form a basis for a malpractice claim.

Finally, the trial court abused its discretion in failing to consider the drastic effect of denying the Schnellers' request to present at trial medical liability expert testimony. "The interests of justice require the circuit court to be aware of the effects of an order denying or granting relief." *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 469, 326 N.W.2d 727, 731 (1982). The effect of denying the Schnellers the right to present an expert medical liability witness was to make it impossible for them to litigate their claim, and resulted in their action being dismissed.

The effect of the trial court's denial of the Schnellers' motion was to dismiss their action with prejudice for a violation of the scheduling order. The trial court was therefore required to apply to its decision sec. 805.03, Stats. The trial court made no finding that the conduct of either the Schnellers or their counsel had been egregious.

In order to dismiss an action under sec. 805.03, Stats., the trial court must find that the plaintiff was in some manner responsible for the delay or violation. Dismissal is an extreme sanction which should be reserved for cases of contumacious conduct for which the plaintiff is in some manner responsible. "[A] host of cases evidence a reluctance of the courts to bar a party from trial on the merits of his [her] claim because of the errors of his [her] legal representatives." Wright & Miller, *Federal Practice and Procedure: Civil,* sec. 2369 at 196 (1971) (footnotes omitted).

## EXCUSABLE NEGLECT STANDARD, IF APPLI-CABLE, APPLIES TO PLAINTIFFS

Even if the standard to be applied in this case is "excusable neglect" under sec. 801.15(2)(a), Stats., the *plaintiffs* were entitled to their motion. "Excusable neglect" under sec. 801.15(2)(a) applies to the party and not the party's attorney. *See Paschong v. Hollenbeck,* 13 Wis. 2d 415, 108 N.W.2d 668 (1961), *cited with approval in Village of Big Bend v. Anderson,* 103 Wis. 2d 403, 408, 308 N.W.2d 887, 890 (Ct. App. 1981). There is nothing in the record to suggest that the Schnellers were in any way responsible for their first attorney's failure to timely name a medical liability expert.

In *Paschong* the appellant sought relief under sec. 269.46(1), Stats. [sec. 806.07, Stats.], because of the attorney's negligence. The court reversed the trial court's failure to exercise its discretion to relieve the appellant from the order. The court said that "a client ought not lose the benefit of a valid defense as a consequence of his attorney's omission." 13 Wis. 2d at 421, 108 N.W.2d at 671. Nor should a client lose the benefit of a valid claim as a consequence of his or her attorney's omission. The court said, "A litigant is not to be penalized for the neglect or mistakes of his lawyer. Courts will relieve parties from the consequences of neglect or mistake of their attorney, when it can be done without substantial prejudice to their adversaries." *Id.* at 422, 108 N.W.2d at 672 (quoting *Duenow v. Lindeman,* 27 N.W.2d 421, 429 (Minn. 1947)). The court further said:

> [T]he rule is . . . that in some cases the particular
> . . . neglect, mistake, or omission of an attorney is
> not to be imputed to his client so as to bar him from

relief from a judgment resulting therefrom and the latter rule prevails where the client used due care in the selection of an attorney to represent him. We see no distinguishing difference between mistake of law, ill advice, neglect, or other actions and omissions by an attorney in the application of sec. 269.46(1), Stats. [sec. 806.07(1)]. This is not to say that such conduct of an attorney is never to be imputed to his client. In applying this section the court is exercising equitable powers to secure a substantial justice between the parties under all the circumstances. This legal discretion may or may not call for imputation depending on the facts of the particular case.

*Paschong,* 13 Wis. 2d at 424, 108 N.W.2d at 673.

It makes no sense for a trial court to dismiss a plaintiff's claim for failure to timely comply with a pretrial order or for failure to prosecute if the plaintiff is blameless and may proceed under sec. 806.07(1)(a), Stats., to obtain relief from the judgment or order which has been entered against him or her. Section 806.07(1) "has reference exclusively to the mistake, inadvertence, surprise, and excusable neglect of a party resulting in a judgment being entered against him which it might be inequitable to enforce." *Sikora v. Jursik,* 38 Wis. 2d 305, 308–09, 156 N.W.2d 489, 491 (1968). On a sec. 806.07 motion, the attorney's conduct is irrelevant unless it is so egregious that it is equitable to impute it to the client. In all cases where a plaintiff's claim is proposed to be dismissed for violation of a pretrial order or for failure to prosecute, the trial court should, therefore, hold an evidentiary hearing to determine whether the circumstances justify imputing the conduct of the attorney to the plaintiff. "In deciding whether to impute the negligence of the lawyer to the client, the trial court must exercise 'its equitable powers to secure substantial jus-

tice between the parties.' This discretion may or may not call for imputation, depending on the facts of each case." *Charolais Breeding Ranches v. Wiegel,* 92 Wis. 2d 498, 514, 285 N.W.2d 720, 728 (1979) (quoting *Paschong,* 13 Wis. 2d at 424, 108 N.W.2d at 673). If, after an evidentiary hearing, the trial court is satisfied that the plaintiff is blameless, the court should impose sanctions on the attorney which will protect the integrity of the judicial process without sacrificing the litigant's claim.

I conclude with the words of the Michigan court: "What are we to tell defendant beyond that he has lost his case? Must we merely express our sympathy and regrets as we turn him away?" Trial courts have ample power to rein in uncooperative counsel without turning blameless claimants away from the court's door. I therefore respectfully dissent.

---

*White v. Sadler,* 87 N.W.2d 192, 199 (Mich. 1957), *quoted in* Mazor, *Power and Responsibility in the Attorney-Client Relation,* 20 Stan. L. Rev. 1120, 1125 (1968).