Filed 3/17/17

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E064000 |
| v. | (Super.Ct.No. RIF1402688) |
| SELINA MICHELE ANGEL, | OPINION |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Michael B. Donner, Judge. Affirmed.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Samantha L. Begovich, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Selina Michele Angel had two jury trials concerning three charges. At the first trial, the jury acquitted defendant of the third count of committing a lewd or lascivious act on John Doe 2 (JD2), a minor under 16 years old. (Pen. Code, § 288, subd. (c)(1).)[1] The first jury was unable to reach a verdict on the remaining two charges.

At the second trial, the jury found defendant guilty of (1) committing a lewd or lascivious act upon John Doe 1 (JD1), a child under 14 years old (§ 288, subd. (a)(1)); and (2) committing a lewd or lascivious act on JD2, a minor under 16 years old (§ 288, subd. (c)(1)). The second jury found true the allegation that defendant engaged in substantial sexual conduct with JD1, who was under 14 years old. (§ 1203.066, subd. (a)(8).) The trial court sentenced defendant to prison for a term of six years eight months.

Defendant contends her counsel rendered ineffective assistance at the second trial by failing to subpoena two witnesses who testified at the first trial. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.     PROSECUTION'S CASE—SECOND TRIAL

In March 2013 JD1 was 13 years old and JD2 was 15 years old. JD1 and JD2 (collectively, the boys) were friends that were "like brothers." One day, in mid- to late-March 2013 the boys went to a mobile home park to visit a relative of JD1. While the

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

boys were outside, defendant invited them to her trailer. The boys entered defendant's trailer.

Defendant asked the boys, "[D]o you want me to perform oral on you?" JD2 replied, "[Y]es." Defendant and the boys were in a bathroom together. Defendant orally copulated JD2, while JD1 was present. Defendant then "switche[d]" to orally copulating JD1, while JD2 was present. When defendant stopped orally copulating JD1, defendant and JD2 engaged in vaginal intercourse, in the bathroom, while JD1 was present. When the intercourse ended, the boys left the trailer.

B.     DEFENDANT'S CASE—SECOND TRIAL

Defendant testified. In March 2013 defendant was 30 years old. Defendant denied having sexual contact with the boys. Defendant had resided at the trailer park, but moved out on February 18. Defendant was avoiding the trailer park in March 2013 because she separated from her husband, who resided in the park.

In late 2012, defendant rejected a romantic advance by JD1's older brother, who was 18 years old. The older brother became hostile toward defendant. For example, defendant believed JD1's older brother stole her cell phone one week after the rejection.

C.     WITNESSES NOT CALLED—SECOND TRIAL

The prosecution's witness list included eight people. Among those on the list were (1) Riverside City Police Officer Flores, and (2) Riverside City Police Officer Cleary (collectively, the officers). Defendant's witness list included two people: (1) defendant, and (2) defendant's husband.

In the midst of the second trial, the prosecutor decided not to call the officers as witnesses. Officer Flores interviewed JD1. Officer Cleary interviewed JD2. The prosecutor explained it was a prospective witness list. The prosecutor included the officers on the witness list in case JD1 and/or JD2 "went sideways" and prior statements needed to be introduced. The prosecutor explained that the testimony given by JD2 was consistent, so prior statements were not needed. Also, JD1's version of events at the second trial primarily came from the first trial's reporter's transcript of JD1's testimony being read into the record, which also did not require prior statements to be introduced. The prosecutor believed it would be redundant to have the officers testify.

Defense counsel stated the prosecutor did not provide notice that the prosecutor did not intend to call the officers as witnesses. Defense counsel explained that he had not subpoenaed the officers because he relied on a courtesy between the Riverside County Public Defender's Office and the Riverside County District Attorney's Office, which permitted defense counsel to not serve a second subpoena on officers that were on the prosecution's witness list. Defense counsel explained that the officers testified at the first trial.

The hearing on this issue took place during a break in defense counsel's cross-examination of JD2. Defense counsel argued that his cross-examination of JD2 was based upon statements JD2 had made at the first trial, which were then impeached by the officers at the first trial. Defense counsel asserted the prosecutor was "intentionally deceptive" in choosing to not call the officers as witnesses, while keeping them on the witness list, because the impeachment at the first trial "vitiated" JD2's testimony.

4

Defense counsel stated he would limit his cross-examination of JD2 based upon the new knowledge that the officers would not be testifying.

The trial court responded, "[Defense counsel], you could have had [*sic*] subpoenaed them." Defense counsel explained that he relied on the subpoena courtesy between the two offices. The trial court responded, "I understand very clearly your position with respect to what you believe is happening between the two offices, but the fact is, is that you could have subpoenaed them."

### D. OFFICER CLEARY'S TESTIMONY—FIRST TRIAL

The prosecutor subpoenaed Officer Cleary for the first trial. Defendant called Officer Cleary as a witness at the first trial. Officer Cleary interviewed JD2 on April 27, 2013. JD2 told Officer Cleary he and JD1 went inside a bathroom with defendant. JD2 said he and JD1 engaged in sexual intercourse with defendant. Specifically, JD2 said he engaged in vaginal intercourse with defendant.

### E. OFFICER FLORES'S TESTIMONY—FIRST TRIAL

The prosecutor subpoenaed Officer Flores for the first trial. Defendant called Officer Flores as a witness at the first trial. Officer Flores interviewed JD1 on April 29, 2013. JD1 discussed being in defendant's trailer with JD2 and defendant. While the three were together, oral copulation occurred.

**DISCUSSION**

Defendant contends her trial counsel rendered ineffective assistance by failing to subpoena the officers for the second trial.

"A defendant seeking to establish the incompetence of trial counsel must show both that counsel's performance was deficient and that this deficient performance prejudiced the defendant's case. [Citation.] In assessing the adequacy of counsel's performance, a court must indulge 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*People v. McDermott* (2002) 28 Cal.4th 946, 987.)

" 'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' [Citation.] ' "[S]econd-guessing" is to be avoided.' [Citation.] Stated differently, the question is not what the 'best lawyers would have done,' nor 'even what most good lawyers would have done,' but simply whether 'some reasonable lawyer' could have acted, in the circumstances, as defense counsel acted in the case at bar. [Citation.] A defendant must show that [her] attorney's performance fell below this objective standard of reasonableness by a preponderance of the evidence." (*People v. Jones* (2010) 186 Cal.App.4th 216, 235.)

Reasonably relying on opposing counsel's professional courtesy is effective assistance, in particular where that courtesy has developed into a common custom and practice. (See *Harrington v. Richter* (2011) 562 U.S. 86, 105 ["The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom"]; see also *Com v. Alebord* (2014) 467 Mass. 106, 114 [custom and practice were established, counsel was not ineffective]; see also *Oostburg State Bank v. United Sav. & Loan Assn.* (1985) 125 Wis.2d 224, 239-240 ["[W]hen considering a claim of excusable neglect, the trial court may not consider attorney conduct, even if dilatory, which occurred when a courtesy agreement was in place"].)

Defendant's trial counsel, A.C. Jones, said he relied on a professional courtesy between the district attorney's office and the public defender's office permitting public defense counsel to not serve a second subpoena on officers on the prosecution's witness list. Mr. Jones stated the courtesy had been in place "as long as I've been in the office." The officers testified at the first trial, and the prosecutor questioned them. The prosecutor included the officers on his witness list for the second trial and gave no indication that he had changed his mind about calling the officers until the second trial was underway.

The district attorney's office and the public defender's office are in litigation with each other every day across the county. As a result, Mr. Jones, who works for the public defender's office, would be familiar with the district attorney's office. Mr. Jones stated the professional courtesy of not needing to serve a second subpoena had been the

7

custom as long as he had been in the public defender's office. Given Mr. Jones's familiarity with opposing counsel's office and the apparent longstanding nature of the courtesy, Mr. Jones could reasonably rely on the custom of not needing to serve a second subpoena on the officers. In other words, a reasonable attorney in this circumstances would have acted the same as Mr. Jones. Therefore, a deficient performance has not been demonstrated.

Defendant contends Mr. Jones's reliance on the professional courtesy was not reasonable because (1) no reasonable attorney relies upon opposing counsel to subpoena beneficial witnesses; and (2) Mr. Jones had notice that the prosecution might not call the officers as witnesses.

Mr. Jones explained that the professional courtesy was in place for two reasons. The first reason was to save taxpayers money. The second reason was to cause less disruption to officers who may be off shift and/or sleeping when the subpoena is served. Perhaps stated more succinctly, this professional courtesy, like all professional courtesies between members of the bar, helps to create a more efficient system of justice.

Mr. Jones could reasonably rely on opposing counsel to subpoena the officers because (1) Mr. Jones was familiar with the district attorney's office; (2) the courtesy had always been extended during the time Mr. Jones was at the public defender's office; and (3) there were good public policy reasons supporting the professional courtesy of not sending redundant subpoenas to law enforcement officers.

8

In regard to defendant's notice assertion, the following procedural history is relevant:  During pretrial discussions for the first trial, Mr. Jones expressed concern that the People may not call JD1 to testify.  Mr. Jones asserted that if JD1 did not testify, then Mr. Jones would need a continuance to subpoena Officer Flores.[2]  The People responded that they had already subpoenaed the officers.  The following exchange occurred:

"The Court:  You should have subpoenaed all the witnesses, both sides, whatever witness you have since you announced ready awhile back.

"Mr. Jones:  Since the People did subpoena that witness, I ask the People make that witness available for the defendant.

"The Court:  You subpoenaed that witness?

"[Prosecutor]:  Yes.

"The Court:  Then it's not an issue.

"Mr. Jones:  I don't want the situation where the People tell their subpoenaed witness they don't have to come.  I'd ask the Court to hold the People's subpoena to be a Court subpoena and that witness made available to the defense.

"The Court:  Okay.  [Prosecutor], do you have any objection to that?  In other words, don't excuse your witnesses until the Court excuses them just in case you need them.

---

[2] Mr. Jones said he would need to subpoena the officer who interviewed JD1, i.e., Officer Flores.  He later named the officer as Officer Cleary.  We infer Mr. Jones misspoke and meant to say Officer Flores because Officer Flores interviewed JD1.

"[Prosecutor]: There's no objection. Over lunch, I'll contact Officer Flores and make sure that he's available next week."

Defendant points to Mr. Jones's statement, "I don't want the situation where the People tell their subpoenaed witness they don't have to come."

Additionally, at the first trial, the defense called the officers to testify, not the prosecutor. Based upon these two portions of the record, defendant reasons Mr. Jones was on notice that (1) he could not rely on the prosecutor's subpoenas; and (2) the prosecutor was unlikely to call the officers as witnesses.

Contrary to defendant's position, the record supports the opposite conclusion. In the first trial, Mr. Jones did not subpoena the officers. Despite that, Mr. Jones was able to rely on the subpoenas that had been served by the prosecutor to call the officers as defense witnesses. Additionally, the prosecutor volunteered to contact Officer Flores during the lunch recess to ensure Officer Flores's availability. This interaction prior to the first trial reflects there were professional courtesies in place concerning officer subpoenas. There is nothing in the manner in which the situation resolved that should have notified Mr. Jones the subpoena courtesy had ended or would not be observed in the second trial. Accordingly, we are not persuaded Mr. Jones was on notice that he could not rely on the subpoena courtesy.

**DISPOSITION**

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

MILLER

J.

We concur:

HOLLENHORST

Acting. P. J.

McKINSTER

J.